[Cite as *State v. Harris*, 2026-Ohio-486.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30426 |
| Appellee | : | |
| | : | Trial Court Case No. 2020 CR 00825/4 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| DEON HARRIS | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on February 13, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HANSEMAN, J., concur.

ADAM J. ARNOLD, Attorney for Appellant
ANDREW T. FRENCH, Attorney for Appellee

EPLEY, J.

{¶ 1} Deon Harris appeals from the trial court's denial of his motion for a new trial based on newly discovered evidence. For the following reasons, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} According to the State's evidence at trial, Harris, King Turner, Daylequan Arnold, and Malik Ogletree were together at the Uptown Lounge in Dayton at various times during the overnight hours of December 20, 2019, into December 21, 2019. Eventually, the four left together in Ogletree's car and drove to an apartment on Ethel Avenue to rob the occupants of drugs, money, and other valuables. Ogletree parked in a nearby alley.

{¶ 3} Upon reaching the apartment, Harris kicked in the door, and the others entered. They encountered Christopher Huntley in the back bedroom and Frankie McGee in the front bedroom. Both Huntley and McGee were shot multiple times by Harris's accomplices. Turner also shot Ogletree in the forearm and himself in the hand during the home invasion. Huntley called 911 and was taken to the hospital, where he died a week later; McGee was deceased when officers arrived at the apartment.

{¶ 4} Later that day, Dayton detectives spoke with and arrested Ogletree, who had gone to a hospital in Springfield for treatment of his gunshot wound. In addition, Dayton detectives learned about surveillance videos from outside Huntley and McGee's apartment and found Ogletree's vehicle. Within days, the police had located and arrested Arnold and

Turner and collected numerous pieces of evidence. In early February 2020, detectives learned that Harris was incarcerated at the Scioto County Jail and traveled there to speak with him. Ultimately, a Montgomery County grand jury indicted Harris on 15 charges related to the incident.

{¶ 5} In January 2022, Harris and Turner were jointly tried by a jury; Ogletree and Arnold had reached plea agreements with the State but had not yet been sentenced. Ogletree testified for the State and identified himself, Turner, Arnold, and "Booman" (who was identified by multiple witnesses as Harris) as the perpetrators. Arnold testified on Turner's behalf, and Turner testified in his own defense. Their testimony differed from Ogletree's, including who participated in the crime; both denied that Turner went to the Ethel Avenue apartment. Arnold identified Harris as one of the participants.

{¶ 6} After weighing conflicting versions of what had occurred, the jury found Harris guilty of four counts of murder, four counts of aggravated burglary, four counts of felonious assault, and one count of having weapons while under disability. All counts, except having weapons while under disability, included a firearm specification. The jury could not reach a verdict on two counts of aggravated murder, and those charges were later dismissed.

{¶ 7} The court conducted a sentencing hearing on January 26, 2022. After merging numerous charges and specifications, the trial court imposed an aggregate sentence of a minimum of 41 years to life to a maximum of 43½ years to life in prison for two counts of murder (Counts 3 and 10) and one count each of aggravated burglary (Count 5) and having weapons while under disability (Count 17). Harris was ordered to pay restitution. The court issued a written judgment entry on February 2, 2022.

{¶ 8} Harris appealed from his convictions, raising four assignments of error. He claimed: (1) his statutory and constitutional speedy trial rights were violated; (2) his

3

convictions were based on insufficient evidence and against the manifest weight of the evidence; (3) the trial court abused its discretion when it failed to exclude two 19-second surveillance video clips from outside the Ethel Avenue apartment and when it denied his motion for a mistrial; and (4) the trial court's judgment entry did not accurately reflect the sentence orally imposed at the sentencing hearing.

{¶ 9} On August 29, 2022, while his appeal was pending, Harris filed a motion for new trial based on newly discovered evidence. The document also referenced postconviction relief, but it contained no constitutional argument to support that. Harris attached an affidavit from Arnold, dated February 11, 2022, in which Arnold averred that he had lied when he testified at trial that Harris had participated in the home invasion. Arnold wrote that he had committed the crime with Ogletree, Ogletree's cousin, and Ogletree's friend, and that Harris was not present. Arnold explained that he had implicated Harris out of "hate, anger, and resentment" due to Harris's mentioning Arnold to the police.

{¶ 10} The State responded that the trial court lacked jurisdiction to address Harris's motion for a new trial while his appeal was pending. It further noted that the motion was untimely and that Harris had not shown that he was unavoidably prevented from filing a timely motion. The trial court did not immediately rule on Harris's motion.

{¶ 11} On March 3, 2023, we sustained Harris's assignment of error regarding his sentence and remanded for the trial court to file a nunc pro tunc entry. We otherwise overruled his assignments of error and affirmed the trial court's judgment of conviction. *State v. Harris*, 2023-Ohio-648 (2d Dist.).

{¶ 12} Two years later, on February 4, 2025, the trial court overruled Harris's motion for a new trial. It reasoned that Harris had not requested leave to file an untimely motion for

4

a new trial, nor did he explain why he was unavoidably prevented from filing a timely motion or discovering the new evidence.

{¶ 13} Harris appeals from the trial court's denial of his motion for a new trial, raising two assignments of error.

## II. Admission of Video at Trial

{¶ 14} In his first assignment of error, Harris claims that the trial court erred in admitting the two 19-second video clips at trial. He argues that the State failed to comply with Crim.R. 16(B)(3) when it did not provide defense counsel access to the tablet from which the videos had been extracted. Harris thus contends that the trial court should not have permitted the State to use those videos at trial over defense counsel's objection.

{¶ 15} Res judicata bars Harris's argument. It is well established that res judicata precludes consideration of issues that were or could have been raised on direct appeal. *State v. Saxon*, 2006-Ohio-1245, ¶ 17; *State v. Shah*, 2023-Ohio-2328, ¶ 12 (2d Dist.). Under this doctrine, "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant . . . on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus; *State v. Moody*, 2024-Ohio-864, ¶ 15 (2d Dist.). "Thus, the doctrine serves to preclude a defendant who has had his day in court from seeking a second on that same issue. In so doing, res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard." *Saxon* at ¶ 18.

{¶ 16} In this case, Harris filed a direct appeal from his judgment of conviction. His fourth assignment of error claimed that the trial court abused its discretion when it failed to

exclude the two 19-second surveillance video clips from outside the Ethel Avenue apartment (State's Exhibit 68), which a detective had retrieved from a Samsung tablet provided by Huntley's girlfriend. Harris argued that the trial court should have excluded the videos as a discovery sanction for the State's failure to provide the tablet, access to the tablet, or a copy of its contents. Upon review, we found no basis to conclude that the State had committed a discovery violation warranting the exclusion of evidence or another sanction. *Harris*, 2023-Ohio-648, ¶ 79-104. Having previously challenged the admission of the two surveillance video clips on direct appeal, Harris cannot raise that issue again in this appeal.

{¶ 17} Harris's first assignment of error is overruled.

### III. Motion for a New Trial

{¶ 18} In his second assignment of error, Harris claims that the trial court erred in denying his motion for a new trial based on newly discovered evidence.

{¶ 19} A criminal defendant may file a motion for a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6). The defendant must establish that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted; (2) has been discovered since the original trial; (3) could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence. *State v. Petro*, 148 Ohio St. 505 (1947), syllabus; *State v. Grad*, 2024-Ohio-5710, ¶ 38.

{¶ 20} When a defendant has been tried by jury, a motion for a new trial based on newly discovered evidence must be filed within 120 days after the verdict was rendered. Crim.R. 33(B). To file a motion for a new trial after that deadline, a defendant must first file

6

a motion for leave, demonstrating "by clear and convincing proof" that he or she was unavoidably prevented from discovering the evidence upon which he or she must rely. *Id*.; *State v. Bostick*, 2025-Ohio-5559, ¶ 11. "[U]ntil a trial court grants leave to file a motion for a new trial, the motion for a new trial is not properly before the court." *State v. Bethel*, 2022-Ohio-783, ¶ 41; *see also State v. McAlpin*, 2026-Ohio-148, ¶ 18 ("[A]n untimely motion for new trial based on newly discovered evidence may be filed only after the trial court grants leave to file it.").

{¶ 21} A defendant is unavoidably prevented from filing a motion for a new trial if the person had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of its existence within the time prescribed for filing the motion in the exercise of reasonable diligence. *State v. Wells*, 2025-Ohio-2792, ¶ 12 (2d Dist.). In general, a defendant fails to demonstrate that he or she was unavoidably prevented from discovering new evidence when the defendant would have discovered that information earlier had he or she exercised due diligence and some effort. *State v. Smith*, 2019-Ohio-3591, ¶ 11 (2d Dist.).

{¶ 22} We review a trial court's denial of a Crim.R. 33 motion for a new trial for an abuse of discretion. *State v. Warren*, 2017-Ohio-853, ¶ 44 (2d Dist.). The term "abuse of discretion" means that the court's attitude is unreasonable, arbitrary, or unconscionable. *McAlpin* at ¶ 14.

{¶ 23} In this case, the jury rendered its verdicts in January 2022. Harris's motion for a new trial based on newly discovered evidence was filed on August 29, 2022, well after the 120-day period had elapsed. Harris does not dispute that his motion was untimely.

{¶ 24} Before filing his untimely motion for a new trial, Harris was required to file a motion for leave with clear and convincing proof that he was unavoidably prevented from

7

discovering the evidence upon which he was relying. Harris did not do so. Instead, he filed his untimely motion for a new trial without requesting leave and thus failed to comply with the requirements of Crim.R. 33(B). Moreover, nothing in Harris's motion addressed why the untimeliness should have been excused. Arnold's affidavit was signed on February 11, 2022, approximately a month after the jury found Harris guilty, but Harris did not explain how or when he learned of Arnold's recantation, and he did not explain how or when he obtained the affidavit. The trial court did not abuse its discretion when it denied Harris's motion due to his failure to seek leave and to explain why he was unavoidably prevented from discovering the new evidence within the 120-day period.

{¶ 25} Harris filed a "motion for extension of time on petition for post-conviction relief motion" on March 1, 2024, approximately a year and a half after he filed his motion for a new trial. He explained that he had suffered a decline in his mental health after his conviction was affirmed on appeal. As a result, he had been placed on suicide watch, his legal paperwork had been thrown away, he was placed in residential treatment, he did not have access to legal resources, and he did not receive the trial transcripts. Harris asked for permission to file a petition for postconviction relief on or before September 3, 2024. The motion for an extension did not mention his pending motion for a new trial nor did it explain why the motion for a new trial was not timely filed. The trial court reasonably did not consider Harris's motion for an extension when denying his motion for a new trial.

{¶ 26} Harris also attached to his notice of appeal a list of dates that he was on suicide watch in the months following his conviction. In reviewing the trial court's decision, we are limited to the record before the trial court; an appellant may not present new evidence on appeal. *Prestige Fin. Servs., Inc. v. Baldwin*, 2025-Ohio-1395, ¶ 11 (2d Dist.). Because this additional information was not provided to the trial court, we cannot consider it.

8

**{¶ 27}** Harris's second assignment of error is overruled.

## IV. Conclusion

**{¶ 28}** The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.